UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
YOUNG J. LEE,

                    Plaintiff,                    **MEMORANDUM AND ORDER**
                                                  20-CV-3093 (RPK) (RER)

        -against-

ENGEL BURMAN GRANDE CARE AT
JERICHO, LLC; ULTIMATE CARE ASSISTED
LIVING MANAGEMENT, LLC; and TIMOTHY
MULARCHUK,

                    Defendants.
-------------------------------------------------------------X
RACHEL P. KOVNER, United States District Judge:

        Plaintiff Young J. Lee filed this action raising claims of sexual harassment and

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and

New York State Executive Law § 296 *et seq.* against former employers Engel Burman Grande

Care at Jericho, LLC ("Engel"), Ultimate Care Assisted Living Management, LLC ("Ultimate"),

and Timothy Mularchuk.  Defendants have moved to dismiss the action and compel arbitration

of plaintiff's claims.  For the reasons set out below, defendants' motion to compel arbitration is

granted.  The motion to dismiss is denied and the action is stayed pending the outcome of

arbitration.

## BACKGROUND

        The following facts are taken from the complaint and documents that were submitted by

both parties in connection with defendants' motion to compel arbitration.  Beginning in July

2019, plaintiff was employed by Engel and Ultimate as an event planner at an assisted living

facility.  Am. Compl. ¶¶ 36-40 (Dkt. #10).  At the time of her hiring, plaintiff signed the last

1

page of a "Dispute Resolution Agreement." *See* Lee Aff. ¶ 7 (Dkt. #20-2); Decl. of Keith Gutstein at 4-6 ("Gutstein Decl.") (Dkt. #18).

The first page of the Dispute Resolution Agreement states, "This is an agreement between [blank] and The Bristal at [blank].  Both parties agree today, [blank] to abide by the following dispute resolution procedure for any covered claims that either of us have against the other arising from my employment."  Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Br.") Ex. 4 at 1 ("Dispute Resolution Agreement") (Dkt. #20-4).   The first and second pages of the agreement state that The Bristal "offers a procedure" for dispute resolution: if an employee raises a complaint with company managers but is unsatisfied with the final written decision, the employee may submit her complaint "to be heard by an independent arbitrator."  *Id.* at 1-2.  The second page further provides that "[t]o be eligible for arbitration, [an employee's] complaint must be based on employment discrimination, harassment involving any Team Member of The Bristal, a wage or hour violation, or other claim under law arising from [the claimant's] employment."  *Id.* at 2.  It defines "arbitration" as "the settlement of a dispute by one or more independent persons who are chosen by [the employee] and The Bristal to hear both sides of the complaint and then come to a decision."  *Ibid*.  It states that an employee "may choose to opt out of the arbitration provisions."  *Ibid*.

The third page of the Dispute Resolution Agreement states that the employee "will not have to pay anything toward the arbitration filing fee.  The Bristal will pay the filing fee and the arbitrator's expenses."  *Id.* at 3.  The last page includes the statement, "If I do not opt out of the arbitration provisions of the [agreement], I waive my right to have my case submitted to a court of law and decided by a judge or jury."  *Id.* at 4.  At the end of the last page, just above two lines

for signatures, is the statement, "After reviewing this information, and receiving answers to my quest[ions], I voluntarily agree to The Bristal's Dispute Resolution Policy." *Ibid.*

At the end of the last page of the agreement are two signature lines. *Ibid.* The first is labeled "Team Member's Signature" and is signed by plaintiff. *Ibid.* The second is labeled "Witness's Signature" and is signed by Andrea Rivera. *Ibid.*

An August 2019 paycheck to plaintiff lists the payor as "Engel Burman Grande Care at Jericho LLC DBA The Bristal Grand." Pl.'s Br. Ex. 1 ("Paycheck") (Dkt. #20-1).

Lee alleges that, beginning in December 2019, her general manager at Ultimate, Timothy Mularchuk, subjected her to sexually inappropriate comments and touching. Am. Compl. ¶¶ 27-31, 41-49. According to the complaint, in January 2020, plaintiff made a formal written complaint of sexual harassment to her employers. *Id.* ¶ 50. Plaintiff then "attended an uncomfortable meeting" with Mularchuk and a "mediating regional director," whose conduct "further escalated Plaintiff's anxiety." *Id.* ¶ 51. Plaintiff alleges that she "was constructively discharged" from her position in February 2020 after her employers failed to take her complaints seriously. *Id.* ¶ 53.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. *See id.* ¶¶ 32-35. She then filed this lawsuit, alleging discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and New York State Executive Law § 296. *See* Compl. (Dkt. #1). She later filed the operative amended complaint. *See* Am. Compl. Defendants have moved to dismiss the amended complaint and compel arbitration. *See generally* Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Dkt. #19).

**STANDARD OF REVIEW**

Courts in this circuit commonly construe a motion to dismiss based on an arbitration clause as a motion to compel arbitration. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139-40 (2d Cir. 2008); *see also, e.g.*, *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016).

When deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quotations omitted); *see Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 525 (S.D.N.Y. 2015). On such a motion, "the court consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer*, 868 F.3d at 74 (quotations omitted). A trial is necessary "[i]f there is an issue of fact as to the making of the agreement for arbitration," but "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," a court may "rule on the basis of that legal issue and avoid the need for further court proceedings." *Nicosia*, 834 F.3d at 229 (citations omitted).

**DISCUSSION**

Under the Federal Arbitration Act ("FAA"), a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "establishes a liberal federal policy favoring arbitration

agreements." *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 98 (2012); *see Arciniaga* v. *Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration[.]").

The "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91-92 (2000)).  Plaintiff seeks to avoid arbitration here on the grounds that (1) she did not assent to the agreement that defendants invoke; (2) defendants are not parties to the agreement; (3) the agreement is unconscionable; and (4) her state-law claims are not subject to arbitration. As explained below, plaintiff's arguments lack merit.

## I.     The parties entered into an arbitration agreement.

Plaintiff first asserts that she did not enter into an agreement to arbitrate.  In determining whether parties agreed to arbitrate, courts look to "state contract law principles." *Abdullayeva v. Attending Home Care Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019); *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).  The parties agree that New York law provides the contract-law principles that are relevant in this case.  *See* Defs.' Br. at 4; Pl.'s Br. at 7 (Dkt. #20). Under New York law, "agreements must be 'construed in accord with the parties' intent.'" *Abdullayeva*, 928 F.3d at 222 (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)).  "The terms of an agreement provide the best evidence of what the parties intend, and 'a written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms.'"  *Ibid.* (quoting *Greenfield*, 780 N.E.2d at 170). The formation of an enforceable agreement requires, among other things, "mutual assent." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (N.Y. App. Div. 2009).  Plaintiff suggests that she did

not assent to the terms of the agreement.  *See* Pl.'s Br. at 6-7.  She states that she "was rushed to sign many documents at the time of [her] hire" and that nobody explained that she was "waiving important rights or otherwise agreeing to arbitrate any potential employment discrimination issue."  Lee Aff. ¶ 7.

Plaintiff's arguments are inadequate to vitiate the consent evidenced by her signature. Under New York law, "a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and [s]he is therefore bound by its terms and conditions." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (citing *Level Exp. Corp. v. Wolz, Aiken & Co.*, 111 N.E.2d 218, 221 (N.Y. 1953)), *aff'd*, 659 F. App'x 40 (2d Cir. 2016); *see Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532, 2018 WL 3579107, at *2 (S.D.N.Y. July 24, 2018).  Similarly, "[a] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract."  *Kamdem Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 565 (S.D.N.Y. 2016) (quotations omitted), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016); *see Moise v. Fam. Dollar Stores of New York, Inc.*, No. 16-CV-6314, 2017 WL 2378193, at *4 (S.D.N.Y. June 1, 2017); *In re Lehman Bros. Inc.*, 478 B.R. 570, 588 n.19 (S.D.N.Y. 2012), *aff'd*, 761 F.3d 303 (2d Cir. 2014).  Here, the Dispute Resolution Agreement states that an employee who does not opt out of its arbitration provisions agrees to arbitrate all claims "arising from [her] employment."  Dispute Resolution Agreement at 2.  The last page of the agreement further specifies that an employee who fails to opt out "waives [the] right to have [the] case submitted to a court of law and decided by a judge or jury."  *Id.* at 4.  Plaintiff does not dispute that she signed the last page when she was hired by defendants.  *See ibid.*; *see also* Pl.'s Br. at 6; Lee Aff. ¶ 7.  Accordingly, plaintiff is bound by the Dispute Resolution Agreement, even if she felt rushed or did not receive an explanation of its meaning.

Plaintiff next suggests that the agreement is unenforceable because of discrepancies in the copy of the agreement that defendants submitted to the court. *See* Pl.'s Br. at 7. She points out that the first two pages of the submitted agreement have a "different typeface" and "font" than the signature pages. *Ibid.* As an initial matter, the last two pages appear to have simply been scanned or reproduced at a different scale than the first two pages. *See generally* Dispute Resolution Agreement. And in any event, discrepancies in typeface or font among the pages of the agreement do not by themselves raise an inference that the first two pages were not actually part of the document that plaintiff signed. *Cf.* Pl's Br. at 7.

To the extent that plaintiff suggests that she was only given the signature page of the Dispute Resolution Agreement, *see* Lee Aff. ¶ 7, that would not vitiate her consent to the agreement. Under New York law, "[a] signer's duty to read and understand that which it signed is not diminished merely because [the signer] was provided with only a signature page." *Dasz, Inc. v. Meritocracy Ventures, Ltd.*, 108 A.D.3d 1084, 1085 (N.Y. App. Div. 2013). Instead, "a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996). As a result, courts in this circuit have found that an agreement to arbitrate was formed where an employee signs some notice of an arbitration policy, even where that policy is merely incorporated by reference. *See, e.g.*, *Armstead v. Starbucks Corp.*, No. 17-CV-1163, 2017 WL 5593519, at *6 (S.D.N.Y. Nov. 17, 2017); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014); *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99-CV-9219, 2001 WL 204214, at *3 (S.D.N.Y. Mar. 1, 2001). Plaintiff is bound under those principles. She undisputedly received the third and fourth pages of the agreement and signed the last page. *See* Dispute Resolution Agreement at 3-4; Pl.'s Br. at 6; Lee Aff. ¶ 7. Those pages

placed plaintiff on notice that she was binding herself to an arbitration policy. *See* Dispute Resolution Agreement at 3-4.

Finally, there is no merit to plaintiff's suggestion that the arbitration agreement is invalid because "there [was] no witness who observed [her] signing" it. Lee Aff. ¶ 7; *see* Pl.'s Br. at 6. Even if there was no witness—notwithstanding the signature on the "witness" line—the formation of an enforceable agreement under New York law does not require the presence of a witness. *See Kowalchuk*, 61 A.D.3d at 121; *see also* Pl.'s Br. at 7. In sum, plaintiff's arguments that she did not assent to the agreement are unavailing.

## II.   Defendants may invoke the arbitration agreement.

Plaintiff next argues that she is not bound to arbitrate her dispute with defendants because they are not parties to the agreement. *See* Pl.'s Br. at 5-6. These arguments lack merit.

Plaintiff contends that defendant Engel is not entitled to invoke the Dispute Resolution Agreement because that agreement describes a contract between plaintiff and "The Bristal," but plaintiff's paystub reveals that her employer was defendant Engel. *See* Pl.'s Br. at 6. This argument lacks merit, because the paystub on which plaintiff relies establishes that those two entities are one and the same. It refers to the payor as "Engel Burman Grande Care at Jericho LLC *DBA The Bristal Grand*." *See* Paycheck (emphasis added). And while plaintiff suggests that the agreement's references to "The Bristal" are references to a different assisted living facility that did not employ plaintiff, *see* Lee Aff. ¶ 5, that makes little sense. Plaintiff signed the agreement "at the time of [her] hire" by defendant Engel, Pl.'s Br. at 6; *see* Am. Compl. ¶ 39, to govern certain disputes "arising from [her] employment," Dispute Resolution Agreement at 1. Plaintiff's counterparty was her employer—not another assisted living facility for which she never worked.

Mularchuk and Ultimate are not named parties or signatories, but they are also entitled to invoke the arbitration procedures in the Dispute Resolution Agreement.  "[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed, . . . and the issues that had arisen' among them discloses that 'the issues the non[-]signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)). In this intertwinement analysis, courts commonly conclude that when an employee's claims against both a signatory employer and a non-signatory co-employer or supervisor arise out of the same alleged misconduct, the non-signatory co-employer or supervisor may invoke arbitration. *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999); *Fenton v. Criterion Worldwide*, No. 18-CV-10224, 2020 WL 1489795, at *6 (S.D.N.Y. Mar. 27, 2020); *Chase Mortg. Co.-W. v. Bankers Tr. Co.*, No. 00-CV-8150, 2001 WL 547224, at *3 (S.D.N.Y. May 23, 2001).  I reach the same conclusion here.  The relationship between the signatory and non-signatory defendants is close: plaintiff alleges that Engel and Ultimate were her co-employers, Am. Compl. ¶¶ 9, 23, 36-37, and that Mularchuk was an employee of Engel and Ultimate who had the authority to supervise, hire, fire, demote, and promote plaintiff, *id.* ¶¶ 25-30.  Moreover, plaintiff's claims against all defendants stem from the same alleged conduct by Mularchuk.  Because plaintiff's claims against the non-signatory defendants are "intertwined" with the claims she agreed to arbitrate, Mularchuk and Ultimate may invoke arbitration.

### III.     Plaintiff has not raised a genuine dispute of material fact as to unconscionability.

Plaintiff fares no better in arguing that the Dispute Resolution Agreement is unconscionable because it is ambiguous as to which party would bear the arbitrator's expenses. *See* Pl.'s Br. at 11.  If "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000). The mere "risk" that a plaintiff "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91.

Plaintiff has not alleged facts sufficient to establish that she would face prohibitive arbitration costs.  She observes that the Dispute Resolution Agreement does not explicitly address who will pay the "arbitrator's compensation," Pl.'s Br. at 12, although it allocates the costs of the filing fee and arbitrator's expenses to defendants, *see* Dispute Resolution Agreement at 3, who assert they will pay the arbitrator's compensation, too, *see* Defs.' Reply Br. at 8-9 (Dkt. #24); *cf. Martin v. SCI Mgmt. L.P.*, 296 F. Supp. 2d 462, 468-69 (S.D.N.Y. 2003).  Even if the cost of the arbitrator's compensation were shared, plaintiff has put forward no evidence that the cost would be prohibitive.  *Green Tree*, 531 U.S. at 91-92.  She states only that she "was informed" that the compensation "may" cost "thousands of dollars"—a cost that she avers would exceed her means.  Lee Aff. ¶ 6.  But *Green Tree* found comparably unsubstantiated allegations inadequate.  *See Green Tree*, 531 U.S. at 90 & n.6 (declining to invalidate arbitration agreement where plaintiff asserted that "[a]rbitration costs are high and that she did not have the resources to arbitrate" but "failed to support this assertion" beyond a discussion of costs that "relied entirely on unfounded assumptions").  And courts in this circuit have likewise rejected efforts to

escape arbitration based on similar "conclusory assertions," *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187, 2006 WL 2166821, at *6 (E.D.N.Y. July 31, 2006), and "speculat[ion]" regarding arbitral costs, *Senisi v. John Wiley & Sons, Inc.*, No. 13-CV-3314, 2015 WL 256094, at *5 (S.D.N.Y. Jan. 21, 2015); *see Whitt v. Prosper Funding LLC*, No. 15-CV-136, 2015 WL 4254062, at *7 (S.D.N.Y. July 14, 2015). Plaintiff's unconscionability claim therefore fails.

## IV.    Plaintiff's claims are covered by the parties' agreement.

The Dispute Resolution Agreement covers plaintiff's claims—not withstanding plaintiff's argument that defendants' conduct suggests otherwise. *See* Pl.'s Br. at 10. "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015); *see Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). To determine whether a plaintiff's claims fall within the scope of an arbitration agreement, courts "analyze the factual allegations made in the plaintiff's complaint," and "[i]f the allegations underlying the claims touch matters covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Holick*, 802 F.3d at 395 (citation omitted).

Plaintiff's claims are arbitrable under these principles. The Dispute Resolution Agreement provides that it extends to any complaint "based on employment discrimination, harassment involving any Team Member of The Bristal, . . . or other claim under law arising from [the claimant's] employment." Dispute Resolution Agreement at 2. Plaintiff's claims that Mularchuk sexually harassed her and that defendants discriminated against her on the basis of

her gender are "based on employment discrimination" and "harassment involving [a] Team Member of The Bristal," Mularchuk, and also "aris[e] from [plaintiff's] employment." *Ibid.*

Plaintiff argues that "defendants' conduct" before plaintiff filed this action nevertheless "demonstrates that they interpreted the agreement to exclude the claims in this action from arbitration." Pl's Br. at 10. She relies on defendants' failure to inform her counsel of the arbitration agreement during their communications before this lawsuit was filed. *Ibid.* But under New York law, the intent of the parties "is generally discerned from the four corners of the document itself." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Inds.*, 784 F.3d 78, 87 (2d Cir. 2015) (quoting *MHR Capital Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009)). "Only when a court finds ambiguity in the parties' written agreement may it look to extrinsic evidence to discern the parties' intent." *Ibid.* (citing *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 434 (N.Y. 2013)). Plaintiff has not identified any ambiguity in the agreement regarding whether it covers plaintiff's claims that would support consideration of extrinsic evidence. It would thus be inappropriate to attempt to divine defendants' understanding of the contract from their pre-suit silence regarding the agreement, instead of from the contract itself. In sum, plaintiff's claims are covered by the Dispute Resolution Agreement.

## V.      Plaintiff's state-law claims are arbitrable.

Finally, plaintiff errs in contending that her state-law discrimination claims are not arbitrable. *See* Pl.'s Br. at 8. Plaintiff invokes a section of New York law providing that "[e]xcept where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain" a prohibited mandatory arbitration clause. N.Y. C.P.L.R. § 7515(i). A prohibited mandatory arbitration clause is any clause that "requires . . . that the parties submit to mandatory arbitration to resolve any allegation or claim of

discrimination." *Id.* § 7515(a). The state statute further provides that "[e]xcept where inconsistent with federal law, the provisions of such [a] prohibited clause . . . shall be null and void." *Id.* § 7515(b)(iii).

Plaintiff's attempt to avoid arbitration based on this provision lacks merit because of FAA preemption. The FAA, which governs any "contract evidencing a transaction involving commerce to settle by arbitration," 9 U.S.C. § 2, "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see Gilbert*, 513 F. Supp. 3d at 397. Accordingly, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011).

This rule is fatal to plaintiff's claim of non-arbitrability based on state law. By its own terms, Section 7515 of the New York Civil Practice Law and Rules does not apply where its application would be "inconsistent with federal law." N.Y. C.P.L.R. § 7515(b)(i), (b)(iii). And to the extent that Section 7515 does not itself carve out agreements that are subject to the FAA, Section 7515 "is displaced by the FAA," *Concepcion*, 563 U.S. at 341, as courts have routinely concluded, *see, e.g.*, *Wyche v. KM Sys., Inc.*, No. 19-CV-7202, 2021 WL 1535529, at *2 (E.D.N.Y. Apr. 19, 2021); *Rollag v. Cowen Inc.*, No. 20-CV-5138, 2021 WL 807210, at *5 (S.D.N.Y. Mar. 3, 2021); *Gilbert*, 513 F. Supp. 3d at 395-98; *Whyte v. WeWork Companies, Inc.*, No. 20-CV-1800, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020); *Latif v. Morgan Stanley & Co. LLC*, No. 18-CV-11528, 2019 WL 2610985, at *4 (S.D.N.Y. June 26, 2019).

Plaintiff attempts to distinguish prior cases applying FAA preemption in the context of Section 7515 on the ground that the parties' arbitration agreement in this case does not expressly

13

state that the FAA governs its interpretation.  *See* Pl.'s Br. at 9-10.  But an agreement is governed by the FAA if it "evidenc[es] a transaction involving commerce," 9 U.S.C. § 2, regardless of whether the agreement specifically refers to the FAA.  Here, the parties' agreement "relates to a 'general practice' involving or affecting commerce, i.e., the employment of persons," and is therefore governed by the FAA.  *Gilbert*, 513 F. Supp. 3d at 400 (quotations omitted); *see E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.").

**VI.     The action is stayed pending the outcome of arbitration.**

An action must be stayed "after all claims have been referred to arbitration and a stay [has been] requested" by either party.  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see* 9 U.S.C. § 3.  Here, plaintiff has requested that the case be stayed, rather than dismissed, if defendants' request to compel arbitration were granted.  *See* Pl.'s Br. at 12-13.  Accordingly, the motion to dismiss is denied, and the action is stayed pending the outcome of arbitration.  *See, e.g.*, *Chang v. United Healthcare*, No. 19-CV-3529, 2020 WL 1140701, at *5 (S.D.N.Y. Mar. 9, 2020); *Porcelli v. JetSmarter, Inc.*, No. 19-CV-2537, 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019); *Abreu*, No. 17-CV-9532, 2018 WL 3579107, at *3.

## CONCLUSION

Defendants' motion to compel arbitration is granted.  The motion to dismiss is denied, and this action is stayed pending the outcome of arbitration.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:  August 23, 2021
        Brooklyn, New York

14